UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

THE ESTATE OF MICKEY MANTLE,          :
MICKEY CHARLES MANTLE MARITAL
TRUST II, BY ITS DULY EMPOWERED       :
EXECUTRIX AND TRUSTEE, MERLYN
LOUISE MANTLE                         :

       Plaintiff -              :      04 Civ. 4310 (KMW)(HBP)
       Counterclaim Defendant,
                                :      REPORT AND
   -against-                        :      RECOMMENDATION
                                :
LEWIS E. ROTHGEB and BASEBALL
LEGEND VIDEO, LTD.,                   :

       Defendants -             :
       Counterclaim Plaintiffs.
                                :
----------------------------------X


      PITMAN, United States Magistrate Judge,


      TO THE HONORABLE KIMBA M. WOOD, United States District

Judge,


# I.   Introduction


      The Estate of Mickey Mantle (the "Estate") moves for an

order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, dismissing Lewis E. Rothgeb and Baseball Legend Video,

Ltd.'s ("BLV") counterclaims for tortious interference with

prospective business relations and breach of contract (Docket

Item 22).  The Estate contends that the counterclaims are defi-

ciently pleaded and time-barred.

For the reasons set forth below, I respectfully recommend that plaintiff's motion to dismiss be granted in its entirety.

II.  Facts

  A.  Background

Plaintiff commenced this action on June 8, 2004, asserting trademark and contract-related claims.  The general nature of these claims and the defenses asserted in response are set forth in my Report and Recommendation, dated August 22, 2007, which recommended that plaintiff's motion for summary judgment be denied and that defendants' motion for summary judgment be granted in part and denied in part.  Familiarity with the Report and Recommendation is assumed.

  B.  Defendants' Counterclaims

Defendants' counterclaims are based on the following allegations.

On or about April 11, 1988, the late baseball great Mickey Mantle and Rothgeb entered into an agreement ("Agreement") for the purpose of making and marketing the film Mickey Mantle: The American Dream Comes to Life ("Picture") (Amended Answer to Complaint and Counterclaims, dated Nov. 29, 2004 ("Counter-

claims") ¶¶ 69-70).  In April or May of 1988, Rothgeb assigned

his rights under the Agreement to BLV (Counterclaims ¶ 74).

Rothgeb began producing the Picture in April 1988 and

first exhibited it in September 1988 (Counterclaims ¶¶ 75-76).

The Picture did not meet with success (Counterclaims ¶ 77).

However, in appreciation for Rothgeb's efforts, Mantle instructed

his attorney, Roy J. True, Esq., to grant Rothgeb the right to

sell merchandise related to the Picture.  True drafted an amend-

ment to the Agreement ("Amendment"), which Mantle and BLV exe-

cuted on or about May 1, 1989 (Counterclaims ¶ 81).

From at least as early as January 23, 1990, defendants

repeatedly requested that Mantle furnish them with the names,

addresses, and telephone numbers of prospective purchasers of the

Picture.  Mantle, the Estate, and their respective attorneys

declined to furnish this information, which, according to defen-

dants, constituted a violation of Paragraph 2.1(vii) of the

Agreement[1] (Counterclaims ¶ 83).

---

[1]Paragraph 2.1(vii) provides in part:

> Mantle shall perform such services as may be
> reasonably required by [Rothgeb] regarding the Project,
> including, without limitation the following:

> (vii) providing [Rothgeb] with, and identifying to
> [Rothgeb], to the extent reasonable possible the names,
> addresses and telephone numbers of third parties in
> possession or control of, or with access to, names,
> addresses and telephone numbers of prospective
> purchasers of the Picture . . . .

(continued...)

In 1990, pursuant to the Agreement and the Amendment defendants entered into a promotional deal with the WABC radio station in New York, under which WABC, in exchange for complimentary copies of the Picture and related merchandise, would provide copies of the Picture and the related merchandise to guests on the radio shows broadcast by WABC before and after Yankee games (Counterclaims ¶ 84). Mantle and True were aware of this promotion and never objected to it (Counterclaims ¶ 85).

Mantle died on August 13, 1995, and Rothgeb sustained major physical injuries as a result of a car accident on about January 11, 1991 (Counterclaims ¶¶ 86-87). In January or early February of 1998, while recovering from the accident, Rothgeb met with Pete Silverman of the Madison Square Garden Network ("MSG") to discuss the possibility of MSG's promoting the Picture during its radio broadcasts of Yankee baseball games. The promotion would have been similar to the 1990 WABC promotion. Silverman expressed an interest in MSG's promotion of the Picture (Counterclaims ¶ 88).

Several days later, however, Silverman told Rothgeb that MSG would not enter into an agreement to promote the Picture. "Silverman explained that the primary reason that MSG would not enter such an agreement was that the Mantle Estate,

_____

(...continued)
(Agreement ¶ 2.1(vii)).

4

acting through True, had informed MSG that Rothgeb was not

entitled to promote the Picture or related merchandise, and

threatened to sue MSG if [it] engaged in any promotion of the

Picture" (Counterclaims ¶ 89).

On February 10, 1998, Rothgeb received the following

fax from True:

> Please refer to the entire Agreement relating to the
> video production <u>Mickey Mantle:  The American Dream</u>
> <u>Comes to Life</u>.  Additionally, refer to past correspon-
> dence wherein I advised, on behalf of the late Mr.
> Mantle, that (i) you were in breach of that Agreement,
> (ii) that you had no license to produce and sell items
> utilizing Mr. Mantle's publicity rights expect as
> specifically limited by the Agreement; and (iii) you
> were in default of the payment and reporting provisions
> of that Agreement.

(Counterclaims ¶ 91, <u>quoting</u> Feb. 10, 1998 fax from True to

Rothgeb).  Rothgeb responded to True via fax, explaining that he

had never received the correspondence to which True referred and

requested that True clarify the allegations made in his February

10, 1998 fax.  True did not respond (Counterclaims ¶ 92).

III. <u>Analysis</u>

    A.   Judgment on the
         Pleadings Standard
         <u>Pursuant to Fed.R.Civ.P. 12(c)</u>

          <u>          </u>Although plaintiff designated its motion as a motion to

dismiss under Fed.R.Civ.P. 12(b)(6), the motion was not filed

until after plaintiff served a reply to defendants' counter-

claims. Thus, plaintiff's motion is properly considered as a
motion for judgment on the pleading under Fed.R.Civ.P. 12(c).
See <u>Gumar v. Shearson, Hammill & Co.</u>, 516 F.2d 283, 286 (2d Cir.
1974); 5C Charles A. Wright & Arthur R. Miller, <u>Federal Practice
& Procedure</u> § 1367, at 211 (3rd ed. 2004)("Wright & Miller").
This distinction is of no moment because the applicable standards
under both Rules are the same. <u>Cleveland v. Caplaw Enters.</u>, 448
F.3d 518, 521 (2d Cir. 2006)("The standard for addressing a Rule
12(c) motion for judgment on the pleadings is the same as that
for a Rule 12(b)(6) motion to dismiss for failure to state a
claim."); <u>King v. Am. Airlines, Inc.</u>, 284 F.3d 352, 356 (2d Cir.
2002)("In deciding a Rule 12(c) motion, we apply the same stan-
dard as that applicable to a motion under Rule
12(b)(6) . . . .")(internal quotation marks omitted); <u>Patel v.
Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d
Cir. 2001).

The standards applicable to a motion to dismiss
pursuant to Rule 12(b)(6) are well-settled and require only brief
review.

> When deciding a motion to dismiss under Rule
> 12(b)(6), [the court] must accept as true all
> well-pleaded factual allegations of the complaint and
> draw all inferences in favor of the pleader. <u>See</u> <u>City
> of Los Angeles v. Preferred Communications, Inc.</u>,
> 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986);
> <u>Miree v. DeKalb County</u>, 433 U.S. 25, 27 n.2, 97 S.Ct.
> 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded
> allegations"); <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d
> 1170, 1174 (2d Cir. 1993). "'[T]he complaint is deemed

to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in
it by reference.'" Int'l Audiotext Network, Inc. v.
Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)
(quoting Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47 (2d Cir. 1991)). The Court also may
consider "matters of which judicial notice may be
taken." Leonard T. v. Israel Discount Bank of New
York, 199 F.3d 99, 107 (2d Cir. 1999) (citing Allen v.
WestPoint-Pepperill, Inc., 945 F.2d 40, 44 (2d Cir.
1991)). In order to avoid dismissal, a plaintiff must
do more than plead mere "[c]onclusory allegations or
legal conclusions masquerading as factual conclusions."
Gebhardt v. Allspect, Inc., 96 F. Supp.2d 331, 333
(S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's
Federal Practice ¶ 12.34[a] [b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002); see also In re Elevator Antitrust

Litig., --- F.3d ---, 06 Civ. 3128, 2007 WL 2471805 at *2 (2d

Cir. Sept. 4, 2007); Johnson & Johnson v. Guidant Corp., 06 Civ.

7685 (GEL), 2007 WL 2456625 at *4 (S.D.N.Y. Aug. 29, 2007).

       The Supreme Court in Bell Atlantic Corp. v. Twombly,

--- U.S. ---, ---, 127 S.Ct. 1955, 1965 (2007) recently held

that, in order to survive a Rule 12(b)(6) motion to dismiss, it

is not necessary for a plaintiff to provide detailed factual

allegations, but the factual allegations asserted must be "enough

to raise a right to relief above the speculative level[.]" See

also Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance,

Inc., 05 Civ. 7776 (KMK), 2007 WL 1701813 at *4 (S.D.N.Y. June

12, 2007). In doing so, the Court expressly disavowed the oft-

cited standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

(1957), that "a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bell Atlantic Corp. v. Twombly, supra, 127 S.Ct. at 1959-60.

The Second Circuit has interpreted Bell Atlantic Corp. v. Twombly as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(emphasis in original); see Wellnx Life Scis. Inc. v. Iovate Health Scis. Research, Inc., 06 Civ. 7785 (PKC), --- F. Supp.2d ---, 2007 WL 2789469 at *6 (S.D.N.Y. Sept. 26, 2007); Mazzaro de Abreu v. Bank of Am. Corp., 06 Civ. 673 (LMM), 2007 WL 2609535 at *3 n.10 (S.D.N.Y. Sept. 10, 2007).

Under both Rule 12(b)(6) and Rule 12(c), "a court must accept the [non-movant's] allegations . . . as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the [non-movant's pleading] unless it appears beyond doubt that the [movant is entitled to judgment as a matter of law.]" Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)(internal quotation marks omitted); see also Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Schechter v. Comptroller of New York, 79 F.3d 265, 270 (2d Cir. 1996); Burns Int'l Sec. Servs., Inc. v. United Plant Guard Workers,

8

<u>Local 537</u>, 47 F.3d 14, 16 (2d Cir. 1995); <u>Davidson v. Flynn</u>, 32 F.3d 27, 29 (2d Cir. 1994); <u>Severino v. Shalala</u>, 93 Civ. 3280 (KMW), 1995 WL 422172 at *1 (S.D.N.Y. July 18, 1995); <u>Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co.</u>, 86 Civ. 7898 (KMW), 1991 WL 116336 at *1 (S.D.N.Y. June 17, 1991).

A party may raise an affirmative defense, such as a statute of limitations defense, in a Rule 12(b)(6) or Rule 12(c) motion if the facts supporting the defense, such as the relevant dates, appear on the face of the challenged pleading. <u>United States v. Space Hunters, Inc.</u>, 429 F.3d 416, 426 (2d Cir. 2005)("A court may dismiss a claim on the basis of an affirmative defense only if the facts supporting the defense appear on the face of the complaint . . . .")(internal quotation marks omitted); <u>Ghartey v. St. John's Queens Hosp.</u>, 869 F.2d 160, 162 (2d Cir. 1989); 5C Wright & Miller, <u>supra</u>, § 1367, at 216 ("The Rule 12(c) motion may be employed by the [movant] as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings.").

B.  Timeliness of
    <u>Defendants' Counterclaims</u>

Before addressing whether the counterclaims are time-barred and, if so, whether an applicable revival statute resuscitates either counterclaim, I must first determine whether New York or Texas law applies to the counterclaims.

1.    <u>Choice of Law</u>

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 415 (2d Cir. 2006).  Thus, New York choice-of-law rules apply here.  Under these rules, where parties enter into a contract and expressly agree on the governing law, "New York courts give 'great deference' to that choice and will apply the chosen substantive law unless 'the jurisdiction whose law is to be applied has no reasonable relation to the agreement or where enforcement of the provision would violate a fundamental public policy.'"  <u>Architectronics, Inc. v. Control Sys. Inc.</u>, 935 F. Supp. 425, 431 (S.D.N.Y. 1996), <u>quoting</u> <u>Am. Special Risk Ins. Co. v. Delta Am. Re Ins. Co.</u>, 836 F. Supp. 183, 188 (S.D.N.Y. 1993); <u>see</u> <u>also</u> <u>Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.</u>, 230 F.3d 549, 556 (2d Cir. 2000)("New York law is clear in cases involving a contract with an express choice-of-law provision:  Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

New York courts, however, regard statutes of limitation as part of New York's procedural law.  <u>Architectronics, Inc. v.</u>

Control Sys. Inc., supra, 935 F. Supp. at 431; Ins. Co. of N. Am.
v. ABB Power Generation, Inc., 925 F. Supp. 1053, 1059 (S.D.N.Y.
1996).  Because New York applies choice-of-law clauses to
substantive law only, Woodling v. Garret Corp., 813 F.2d 543, 551
(2d Cir. 1987); Gambar Enters., Inc. v. Kelley Servs., Inc., 69
A.D.2d 297, 304, 418 N.Y.S.2d 818, 822 (4th Dep't 1979), New York
courts do not apply choice-of-law clauses to determine what
statute of limitations applies.  Ins. Co. of N. Am. v. ABB Power
Generation, Inc., supra, 925 F. Supp. at 1059.  Instead, "New
York courts apply New York statutes of limitations to claims
filed in New York even when, as here, the claims arise out of a
contract providing that its terms shall be construed in
accordance with the law of another state."  Architectronics, Inc.
v. Control Sys. Inc., supra, 935 F. Supp. at 431; see Woodling v.
Garrett Corp., supra, 813 F.2d at 551; Ins. Co. of N. Am. v. ABB
Power Generation, Inc., supra, 925 F. Supp. at 1059.

> 2.   New York's Statutes of Limitations

        Plaintiff argues that both of the counterclaims --
tortious interference with prospective business relations and
breach of contract -- are time-barred under New York law
(Memorandum of Law in Support of Plaintiff's Motion to Dismiss
the Defendants' Counterclaims, dated May 18, 2005 ("Plf. Mem.")
at 12-14, 18-20).  In their opposition papers, defendants seem to

concede that the counterclaims are time-barred to the extent the counterclaims are seeking affirmative relief (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss the Defendants' Counterclaims, dated May 25, 2005 ("Def. Mem.") at 16). Defendants contend, however, that, even if time-barred, the counterclaims can be asserted pursuant to New York's revival statute, N.Y. C.P.L.R. § 203(d), for equitable recoupment purposes only (Def. Mem. at 16). Before addressing whether the counterclaims are revived, I must initially determine whether those counterclaims are time-barred. See Blythe Indus., Inc. v. P.R. Aqueduct & Sewer Auth., 607 F. Supp. 1386, 1390 (S.D.N.Y. 1985).

Under New York law, a claim for tortious interference with prospective business relations is subject to a three-year statute of limitations running from the date of injury. N.Y. C.P.L.R. § 214(4); Pasqualini v. Mortgageit, Inc., 498 F. Supp.2d 659, 668 (S.D.N.Y. 2007); Classic Appraisals Corp. v. DeSantis, 159 A.D.2d 537, 537, 552 N.Y.S.2d 402, 403 (2d Dep't 1990). Defendants allege that the facts giving rise to their tortious interference counterclaim occurred during early February of 1998 (Counterclaims ¶¶ 88-89). Since the alleged tortious interference occurred more than three years before defendants

filed their original answer on September 22, 2004,[2] the tortious interference counterclaim is time-barred.

New York has a six-year statute of limitations for breach of contract that runs from the date of the breach. N.Y. C.P.L.R. § 213(2); Malmsteen v. Berdon, LLP, 477 F. Supp.2d 655, 665 (S.D.N.Y. 2007); Guzman v. 188-190 HDFC, 37 A.D.3d 295, 297, 830 N.Y.S.2d 112, 114 (1st Dep't 2007). Defendants' claim that plaintiff breached the Agreement in two separate ways (Counterclaims ¶ 104).[3] The first is alleged to have occurred on January 23, 1990 (Counterclaims ¶ 83) and the second in February of 1998 (Counterclaims ¶ 88). Since both alleged breaches occurred more than six years before defendants filed their original answer, both specifications of breach are time-barred.

Therefore, both of the counterclaims are time-barred under New York law.

---

[2] Defendants make no argument that their counterclaim relate back to any earlier date.

[3] Defendants initially alleged that plaintiff breached the Agreement in four ways (Counterclaims ¶ 104). Defendants have now withdrawn two specifications of breach: namely, (1) plaintiff's alleged grant of rights that allowed the production of a competing film in violation of Paragraphs 7.1(c) and 8.2 of the Agreement and (2) plaintiff's alleged disclosure of confidential information in violation of Paragraph 7.1(e) of the Agreement (Def. Mem. at 3 n.1).

C.   Revival of
     Defendants' Counterclaims

          The New York revival statute provides, in pertinent

part:

> [I]f [a] defense or counterclaim arose from the
> transactions, occurrences, or series of transactions or
> occurrences, upon which a claim asserted in the
> complaint depends, it is not barred to the extent of
> the demand in the complaint notwithstanding that it was
> barred at the time the claims asserted in the complaint
> were interposed.

N.Y. C.P.L.R. § 203(d).  Under Section 203(d), counterclaims that

are time-barred may be revived for equitable recoupment purposes

if they arise from the same transactions or occurrences that form

the factual bases of a claim in the complaint.  Adler v. Alcide

Corp., 96 Civ. 1214 (DAB), 1998 WL 684597 at *2 (S.D.N.Y. Sept.

30, 1998); Bloomfield v. Bloomfield, 97 N.Y.2d 188, 193, 764

N.E.2d 950, 952, 738 N.Y.S.2d 650, 652 (2001); 182 Franklin St.

Holding Corp. v. Franklin Pierrepont Assocs., 217 A.D.2d 508,

509, 630 N.Y.S.2d 64, 65 (1st Dep't 1995).[4]  Where, as here, a

diversity claim is governed by New York limitations law, the

court must analyze whether Section 203(d) applies.  Mopex, Inc.

_____

     [4]Defendants argue that Section 203(d) applies even where, as
here, the counterclaims are first asserted in an amended pleading
so long as the original pleading alleges facts that put plaintiff
on notice that defendant had claims against plaintiff.  See
Geller Media Mgmt., Inc. v. Chenault, 95 Civ. 8301 (RPP), 1997 WL
362446 at *2 (S.D.N.Y. July 1, 1997).  Plaintiff does not dispute
this argument and, thus, I shall assume defendants' original
pleading put plaintiff on sufficient notice.

v. Am. Stock Exch., LLC, 02 Civ. 1656 (SAS), 2002 WL 342522 at *7 (Mar. 5, 2002).

Counterclaims that are "revived" under Section 203(d) will not provide a basis for an award of affirmative relief to the counterclaimant; instead, these counterclaims merely operate to reduce any damages the counterclaimant might otherwise have to pay. Burgee v. Patrick, 91 Civ. 3023 (MJL), 1996 WL 227819 at *6 (S.D.N.Y. May 3, 1996)("Recoupment is the right of a defendant to have the plaintiff's claim reduced by reason of a claim the defendant has against the plaintiff arising out of the same transaction on which the plaintiff's claim is based."); DeMille v. DeMille, 5 A.D.3d 428, 429, 774 N.Y.S.2d 156, 158 (2d Dep't 2004); Enrico & Sons Contracting, Inc. v. Bridgemarket Assocs., 252 A.D.2d 429, 430, 675 N.Y.S.2d 351, 353 (1st Dep't 1998).

Counterclaims that present "a new theory or allege a new cause of action" are permitted as long as they arise from the same transactions or occurrences as a claim in the complaint. See Mopex, Inc. v. Am. Stock Exch., LLC, supra, 2002 WL 342522 at *7 (internal quotation marks omitted).

The defendant bears the burden of demonstrating that a counterclaim satisfies the same transaction test. Bankboston (Guernsey) Ltd. v. Schupak, 99 Civ. 876 (BSJ), 2000 WL 423526 at *4 (S.D.N.Y. Apr. 18, 2000); Falk v. FFF Indus., Inc., 731 F. Supp. 134, 139 (S.D.N.Y. 1990); Rochester Health Network, Inc. v.

Rochester Hosp. Serv. Corp., 123 A.D.2d 509, 510, 507 N.Y.S.2d
100, 101 (4th Dep't 1986).

      1.   Revival of Counterclaim
            for Tortious Interference with
            <u>Prospective Business Relations</u>

Defendants argue that their counterclaims arise from
the same transactions and occurrences that underlie plaintiff's
breach of contract claim (Def. Mem. at 19). Thus, I must
initially determine what "transactions or occurrences" give rise
to plaintiff's breach of contract claim.[5]

In its Complaint, plaintiff alleges that defendants
breached the Agreement by not paying royalties or providing an
accounting to plaintiff for the sale of products from an
unauthorized website created by defendants (Complaint ¶ 80-86).
Plaintiff's allege that this website became operational in
approximately October 1998 (Complaint ¶ 18).

Defendants argue that True's alleged interference with
their prospective business relations with MSG explains why
plaintiff sued defendants for breach of the Agreement (Def. Mem.
at 18-20). Specifically, defendants argue that Rothgeb's

_____

[5]Defendants note that "the remainder of [plaintiff's]
claims, which include claims based on trademark law and the right
of publicity, depend upon the Breach Claims" (Def. Mem. at 18).
Because defendants focus solely on plaintiff's breach of contract
claim in support of their Section 203(d) argument, I do not
address any of plaintiff's other claims in the Complaint.

negotiations with MSG "directly and proximately motivated" True to send Rothgeb the February 10, 1998 fax, which accused Rothgeb of being in default of the payment and reporting provisions of the Agreement (Def. Mem. at 20). Defendants argue that they should be given the opportunity to assert counterclaims based on the facts that allegedly gave rise to True's accusations (Def. Mem. at 20-22, 24).

Plaintiff contends that the tortious interference counterclaim does not "relate in any manner or time" to its breach of contract claim because the breach of contract claim arises from Rothgeb's failure to pay royalties and provide an accounting to plaintiff, which occurred after True's alleged call to MSG officials (Plf. Mem. at 13). Plaintiff argues that the prospective MSG deal was an "isolated event" that is unrelated to the allegations giving rise to plaintiff's breach of contract claim (Plf. Mem. at 13). Plaintiff's argument is persuasive.[6]

---

[6]Plaintiff also argues that the facts giving rise to the tortious interference counterclaim "ha[ve] nothing to do with the allegations" of the Complaint because the allegations in the Complaint "chiefly sound in trademark and other statutory violations" (Plf. Mem. at 13). But a counterclaim need not assert the same type of legal theory as a claim in the complaint in order to be revived by Section 203(d). <u>Mopex, Inc. v. Am. Stock Exch., LLC</u>, <u>supra</u>, 2002 WL 342522 at *7; <u>Rochester-Genesee Reg'l Transp. Dist., Inc. v. Trans World Airlines, Inc.</u>, 86 Misc.2d 1011, 1013, 383 N.Y.S.2d 856, 857 (1976).

Lastly, plaintiff points to language in defendants' amended pleading that seeks affirmative relief and seems to argue that this language precludes application of Section 203(d) (<u>see</u> Reply
(continued...)

The New York Court of Appeals has stated that for Section 203(d) to apply the counterclaim must "seek a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought[.]" SCM Corp. v. Fischer Park Lane Co., 40 N.Y.2d 788, 791, 358 N.E.2d 1024, 1027 ,390 N.Y.S.2d 398, 401-02 (1976).  The counterclaim for tortious interference does not "grow out of" the facts giving rise to plaintiff's breach of contract claim.

Here, the allegations underlying plaintiff's breach of contract claim relate to defendants' alleged sale of products from their unauthorized website and defendants' subsequent failure to pay royalties and account to plaintiff as required by the Agreement (Complaint ¶¶ 80-86).  Plaintiff alleges that the unauthorized website become operational in approximately October

(...continued)
Memorandum of Law in Further Support of Plaintiff's Motion to Dismiss the Defendants' Counterclaims, dated May 27, 2005 ("Plf. Reply Mem.") at 9-10).  According to plaintiff, because the Counterclaims seeks damages, including punitive damages, and a permanent injunction, (Counterclaims at 22 (subdivisions (c) & (d))), and because the doctrine of equitable recoupment does not allow affirmative relief, the counterclaims cannot be revived (Plf. Rely Mem. at 9-10).  The fact that the Counterclaims seeks affirmative relief is not fatal.  A court may grant any appropriate relief "even if the party has not demanded such relief in the party's pleadings."  Fed.R.Civ.P. 54(c); see Burgee v. Patrick, supra, 1996 WL 227819 at *7 (limiting relief on counterclaims revived by Section 203(d) where defendant's pleading could be read to seek affirmative relief).  Although a time-barred counterclaim cannot support an award of affirmative relief, there is no reason why defendants' defective prayer for affirmative relief should, by itself, prevent the counterclaims from offsetting any damage to which defendants are entitled.

1998 (Complaint ¶ 18). Defendants allege that the facts constituting their counterclaim for tortious interference occurred in January or early February of 1998 (Counterclaims ¶¶ 88-89). This time disparity of at least eight months militates in favor of concluding that the claim and counterclaim do not arise from the same transactions or occurrences for purposes of Section 203(d). See Macaluso v. U.S. Life Ins. Co., 03 Civ. 2337 (GEL), 2004 WL 1497606 at *7 (S.D.N.Y. July 2, 2004)("New York courts have generally required a tight nexus between claim and counterclaim before section 203(d) will save a counterclaim from an otherwise-applicable statute of limitation"; no revival where about two years elapsed between facts giving rise to claim and counterclaim); Bankboston (Guernsey) Ltd. v. Schupak, supra, 2000 WL 423526 at *4 (thirteen years); Prospect Group, Inc. v. Kirby, 91 Civ. 3390 (PKL), 1992 WL 400732 at *12 (S.D.N.Y. Dec. 23, 1992)(three years); First Fidelity Bank N.A. v. Companhia de Navegacao Maritima Netumar, 637 F. Supp. 1182, 1185 (S.D.N.Y. 1986)(ten years).

Defendants also argue that plaintiff's claim for breach of contract "(1) depend[s] on whether the Agreement was in fact terminated in response to Defendants' efforts to enter a promotional arrangement with MSG and (2) can only be responded to by reference to the conduct through which Plaintiff interfered with Defendants' efforts to generate sales that might have

resulted in royalties being owed" (Def. Mem. at 21-22).
Defendants' premise is wrong because plaintiff's breach of
contract claim depends on the alleged sale of products from
defendants' unauthorized website -- not any sale that might have
derived from a potential promotional arrangement with MSG.

Even assuming the truth of the allegations in
defendants' pleading and drawing all inferences in defendants'
favor, the facts serving as the basis of the tortious
interference counterclaim do not sufficiently relate to
defendants' alleged operation of an unauthorized website to sell
Mantle merchandise and defendants' alleged failure to pay
royalties and provide an accounting to plaintiff for purposes of
Section 203(d).  Instead, the tortious interference counterclaim
is more akin to a monetary setoff based on a separate and
distinct claim, which is impermissible under Section 203(d).  See
Bankboston (Guernsey) Ltd. v. Schupak, supra, 2000 WL 423526 at
*4; Falk v. FFF Indus., Inc., 731 F. Supp. 134, 139 (S.D.N.Y.
1990); SCM Corp. v. Fischer Park Lane Co., supra, 40 N.Y.2d at
791, 358 N.E.2d at 1027, 390 N.Y.S.2d at 401-02; Rochester Health
Network, Inc. v. Rochester Hosp. Serv. Corp., supra, 123 A.D.2d
at 510, 507 N.Y.S.2d at 101.

I conclude that defendants have not plead facts
sufficient to establish that their tortious interference
counterclaim arises out of the same transactions as plaintiff's

breach of contract claim.  Accordingly, plaintiff's motion to
dismiss the tortious interference counterclaim on the ground that
it is time-barred and not revived by Section 203(d) should be
granted.

2.  Revival of Breach of
    Contract Counterclaim

Defendants contend that both specifications of their
counterclaim for breach of contract -- (1) that plaintiff
breached the contract by failing to furnish information to
defendants and (2) that True's alleged interference with
Rothgeb's contractual rights constituted a breach -- are revived
because they relate to facts put into issue by plaintiff's breach
of contract claim (Def. Mem. at 19, 23-24).  Defendants assert
that the breach counterclaim serves to explain why they have not
paid royalties allegedly owed to plaintiff and why they have not
provided an accounting (Def. Mem. at 18-21).  In reply, plaintiff
argues that the predicate facts of the counterclaim for breach of
contract do not arise from the same transactions or occurrences
that form the basis of plaintiff's breach of contract claim (Plf.
Mem. at 19-20).  I agree with plaintiff.

The facts underlying the first specification of breach
are too attenuated in terms of time from the facts giving rise to
plaintiff's claim for breach of contract to satisfy Section
203(d)'s same transaction test.  Counterclaims have been held to

fall outside the ambit of the same transaction test where a
substantial amount of time has elapsed between the facts giving
rise to the claim and counterclaim.  For example, in <u>First
Fidelity Bank N.A. v. Companhia de Navegacao Maritima Netumar</u>,
<u>supra</u>, 637 F. Supp. 1182, plaintiff brought an action to recover
money allegedly owed under a contract for stevedoring services
plaintiff rendered in 1983 and 1984 for defendant.  Defendant
asserted a counterclaim for breach of contract, alleging that
plaintiff had overcharged defendant for workers' compensation
insurance from January 1971 to September 1973.  Defendant argued
that the counterclaim "arose out of the same transaction as the
main claim" because defendant and plaintiff had purportedly
entered into an oral contract in 1971 that required defendant to
pay the insurance to plaintiff and required plaintiff to perform
the stevedoring services to defendant.  <u>First First Fidelity Bank
N.A. v. Companhia de Navegacao Maritima Netumar</u>, <u>supra</u>, 637 F.
Supp. at 1185.  In holding that the counterclaim was not revived,
the Honorable Gerard Goettel, United States District Judge,
relied in part on the large temporal gap between the facts
underlying the claim and the counterclaim:

> The plaintiff's claim arose out of the defendant's
> alleged failure to pay for the services the plaintiff
> rendered in 1983 and 1984.  The defendant's alleged
> overpayments transpired more than ten years earlier as
> part of a separate transaction involving the provision
> of different and separable stevedoring services.  The
> defendant's counterclaim is wholly unrelated to that
> aspect of the plaintiff/defendant relationship upon

22

> which the plaintiff has brought suit and, therefore,
> cannot give rise to a claim for recoupment.

First Fidelity Bank N.A. v. Companhia de Navegacao Maritima

Netumar, supra, 637 F. Supp. at 1185; see also Macaluso v. U.S.

Life Ins. Co., supra, 2004 WL 1497606 at *7; Bankboston

(Guernsey) Ltd. v. Schupak, supra, 2000 WL 423526 at *4; Prospect

Group, Inc. v. Kirby, supra, 1992 WL 400732 at *3, *12 (holding

same transaction not satisfied where plaintiff's claim arose from

defendant's alleged breach of a "Purchase Agreement" in 1998 and

defendant's counterclaim arose from plaintiff's alleged breach of

a separate contract in 1985).

Here, as in First Fidelity, the first aspect of the

breach counterclaim arises from events that allegedly occurred

many years before the events giving rise to plaintiff's claim for

breach of contract.  Defendants allege that, in January of 1990,

plaintiff failed to furnish requested information to defendants

in violation of Paragraph 2.1(vii) of the Agreement

(Counterclaims ¶ 83).  These events are "wholly unrelated" to

defendants' alleged failure to pay royalties or provide an

accounting concerning products sold in or about 1998 from an

unauthorized website (Complaint ¶¶ 80-86).  Events that may have

occurred eight years apart cannot be said to be part of the same

"transactions or occurrences" for purposes of Section 203(d).

Thus, plaintiff's alleged failure to furnish information to

defendants does not arise from the same transactions that serve as the bases for plaintiff's breach of contract claim.

In addition, it is not enough that the second aspect of the breach counterclaim -- that True interfered with defendants' contractual rights -- is based on the same contract as plaintiff's breach of contract claim.[7]  Courts have held that Section 203(d) does not necessarily revive a counterclaim simply because the counterclaim is based on the same contract that gives rise to plaintiff's claim.  For instance, in LaLoggia v. Document Sec. Sys., Inc., No. 2005/08307, 2006 WL 1465595 (N.Y. Sup. Ct. Mar. 22, 2006), appeal dismissed, 41 A.D.3d 1301, 836 N.Y.S.2d 473 (4th Dep't 2007), plaintiff asserted a claim for breach of contract, alleging that defendant owed him money for consulting services.  Defendant counterclaimed for breach of contract, arguing that plaintiff did not render consulting services required by the contract during an earlier time period.  In holding that Section 203(d) did not revive the counterclaim, the court concluded that "'[c]laims that do not arise out of reciprocal contractual obligations or the same set of facts are not part of the same transaction for recoupment purposes.'"

---

[7]Defendants argue that this aspect of their breach counterclaim does not "merely arise[] from the Agreement" but rather arises from "facts unavoidably put into issue" by plaintiff's claim (Def. Mem. at 24).  Defendants, however, do not explain how this aspect of their breach counterclaim relates to such facts, nor do they cite any case in support of this argument.

LaLoggia v. Document Sec. Sys., Inc., supra, 2006 WL 1465595 at
*2, quoting Global Crossing Bandwith, Inc. v. Centrix Telecom,
LLC, 03 Civ. 6665T, 2004 WL 2284737 at *2 (W.D.N.Y. Oct. 7,
2004).  The court explained that the parties were not suing on
reciprocal contractual obligations because plaintiff's
performance under one part of the agreement, which formed the
basis of plaintiff's breach claim, could be completed without
regard to the contractual performance required under the part of
the agreement that formed the basis of defendant's breach
counterclaim.  LaLoggia v. Document Sec. Sys., Inc., supra, 2006
WL 1465595 at *3; see First Fidelity Bank N.A. v. Companhia de
Navegacao Maritima Netumar, supra, 637 F. Supp. at 1185 (finding
Section 203(d) did not apply where claim and counterclaim related
to separate contractual obligations under same oral contract).

          Here, the second aspect of the counterclaim for breach
of contract -- that True interfered with defendants' contractual
rights by stating to MSG that Mantle did not support the Picture
-- is not even based on an express contractual obligation; that
is, the Agreement does not place a duty on plaintiff to represent
to third parties that Mantle supported the Picture.  Instead, the
Agreement grants defendants the right to state that Mantle
supports the Picture (Agreement ¶ 3.8).  Plaintiff grounds its
claim for breach of contract on violations of the royalty payment
and accounting provisions of the Agreement and Amendment

(Agreement ¶¶ 4.1, 4.5; Amendment ¶ 2), which are not at all contingent on or the reciprocal of defendants' exercise of their right to inform third parties that Mantle supports the Picture. Thus, applying the rationale used by the LaLoggia court, it follows that Section 203(d) does not revive the second aspect of the breach counterclaim because it does not "grow out of" a contractual obligation that is reciprocal to the contractual obligations giving rise to plaintiff's claim for breach of contract.

Even assuming True's conduct amounted to a violation of a contractual duty and, thus, constituted a breach of the Agreement, Rothgeb's talks with MSG are not part of the same transactions or occurrences that give rise to plaintiff's claim for breach of contract because the talks with MSG do not relate to defendants' alleged sale of products from an unauthorized website that triggered the royalty payment and accounting obligations of the Agreement.  Instead, defendants contend that True's alleged statement to MSG that Mantle did not support the Picture caused MSG to abandon the talks with defendants, preventing defendants from promoting any merchandise related to the Picture (Def. Mem. at 18-21).  If plaintiff did materially breach the Agreement, defendants would have been entitled to terminate the contract and sue for damages.  If, on the other hand, defendants declined to terminate the Agreement, there is no

legal theory under which plaintiff's alleged breach would have transformed the Agreement into a royalty-free license.  As the court in First Fidelity observed in words that are applicable here, "[s]uch fortuitously and tangentially connected events cannot form the predicate of an equitable recoupment claim.  Were we to hold otherwise, we would transform § 203[(d)] and the doctrine of equitable recoupment codified therein from a shield into a sword and thereby defeat its intended purpose."  First Fidelity Bank N.A. v. Companhia de Navegacao Maritima Netumar, supra, 637 F. Supp. at 1185.

Although plaintiff's breach claim and defendants' breach counterclaim both relate to the Agreement, neither aspect of the breach counterclaim satisfies the same transaction test.  Cf. SCM Corp. v. Fischer Park Lane Co., supra, 40 N.Y.2d at 792, 358 N.E.2d at 402, 390 N.Y.S.2d at 1027 ("[W]hile in a most general sense both might be said to be associated with the lease, in the language of C.P.L.R. 203[d], the claims do not arise out of the same transactions or occurrences.").  Therefore, plaintiff's motion to dismiss the counterclaim for breach of contract on the ground that it is not revived by Section 203(d) should also be granted.

## IV.  Conclusion

Accordingly, for the reasons set forth above, I respectfully recommend that plaintiff's motion to dismiss the counterclaims on the ground that they are time-barred be granted. In light of this conclusion, plaintiff's argument that the counterclaims fail to state claims is moot.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States District Judge, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Wood.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir.

1983).

Dated:  New York, New York
        November 6, 2007

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Charles N. Rose, Esq.
Amos B. Elberg, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York  10019-6064

Dorothy M. Weber, Esq.
Shukat Arrow Hafer Weber & Herbsman, LLP
111 West 57th Street, Suite 1120
New York, New York  10019