UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
THE ESTATE OF MICKEY MANTLE, MICKEY :
CHARLES MANTLE MARITAL TRUST II, BY :
ITS DULY EMPOWERED EXECUTRIX AND    :
TRUSTEE, MERLYN LOUISE MANTLE,      :
                                    :
            Plaintiff-              :    04 CV 4310(KMW)(HBP)
            Counterclaim Defendant, :    <u>Opinion and Order</u>
                                    :
      -against-                     :
                                    :
LEWIS E. ROTHGEB and BASEBALL       :
LEGEND VIDEO, LTD.,                 :
                                    :
            Defendants-             :
            Counterclaim Plaintiffs.:
                                    :
------------------------------------X

WOOD, U.S.D.J.:

Plaintiff filed suit against Defendants on June 8, 2004, alleging (1) breach of contract; (2) trademark infringement and dilution; (3) infringement of the right to publicity; (4) false designation of origin; (5) unfair competition; (6) misappropriation of goodwill; and (7) unjust enrichment.[1] Plaintiff also seeks (1) a declaratory judgment that the contract among the parties has terminated (the "Declaratory Judgment claim"); and (2) an accounting of Defendants' income arising from their alleged breach of contract (the "Accounting claim").[2]

---

[1] The Court shall refer to claims 2 through 7, collectively, as Plaintiff's "trademark-related claims."

[2] On November 29, 2004, Defendants answered and filed counterclaims against Plaintiff. The Court does not address

1

On February 6, 2007, Defendants filed a motion for summary judgment with respect to the entire Complaint. On February 8, 2007, Plaintiff filed a motion for partial summary judgment with respect to its claims for (1) breach of contract; (2) trademark infringement and dilution; (3) unfair competition; (4) false designation of origin; and (5) Declaratory Judgment. The Court referred both motions to Magistrate Judge Pitman.

On August 22, 2007, Magistrate Judge Pitman issued a Report and Recommendation ("Report"), familiarity with which is assumed, recommending that the Court (1) deny Plaintiff's motion for partial summary judgment; and (2) grant in part and deny in part Defendants' motion for summary judgment. Both parties timely objected to the Report, and Defendants timely replied to Plaintiff's objections. For the reasons stated below, the Court adopts the Report only in part. The Court denies Plaintiff's motion for partial summary judgment and grants in part and denies in part Defendants' motion for summary judgment.

I. Background

Plaintiff's claims arise from an April 11, 1988 agreement between the late baseball player Mickey Mantle[3] and Defendant Lewis Rothgeb (the "Agreement"), pursuant to which Defendant

---

Defendants' counterclaims in this opinion.

[3] Mickey Mantle died in 1995, after which Plaintiff succeeded to all of his rights.

2

Rothgeb agreed to produce and distribute a documentary film about Mr. Mantle (the "Picture").[4] Mr. Mantle and Defendant Baseball Legend Video, Ltd. ("BLV") amended the agreement on May 1, 1989 (the "Amendment").[5] The Agreement and the Amendment (together, the "Amended Agreement") provided that Defendants would pay Mr. Mantle royalties from the Picture and merchandise sales. It gave Defendants the right to use Mr. Mantle's name, biography, physical likeness, and voice (the "Mantle Indicia") for limited purposes related to promoting the Picture and Picture-related merchandise. See Agreement ¶¶ 3.2, 4.1, 4.5; Amendment ¶¶ 1, 2.

Plaintiff alleges that Defendants violated the Amended Agreement by, inter alia, (1) failing to pay Plaintiff royalties owed or to provide an accounting; (2) creating an online "Yahoo Store" on the website yahoo.com (the "Yahoo Store"); (3) publishing a book entitled Mickey Mantle: The American Dream Comes to Life (the "Book"); and (4) creating a website themick.com (the "Website") that describes itself as "official" and offers links to and direct sales of products that have no relation to the Picture or Mickey Mantle. Plaintiff further alleges that Defendants' unauthorized use of the Mantle Indicia violated the Lanham Act, see 15 U.S.C. §§ 1114(1), 1125(a), the

---

[4] Defendant Rothgeb made the Picture between April and August 1988 and first exhibited it on September 1, 1988.

[5] BLV is a business entity controlled by Mr. Rothgeb, to which he has assigned his rights under the Agreement.

3

Federal Trademark Dilution Act of 1996, see 15 U.S.C. § 1125(c), and New York state common law.

Defendants respond that (1) they do not owe Plaintiffs any royalties or accounting; (2) their actions were permitted by the plain language of the Amended Agreement; (3) Plaintiff's contract claims are barred by the statute of limitations; and (4) Plaintiff's trademark-related claims are barred by laches.

II. Discussion

The Court must consider Plaintiff's and Defendants' objections to the Report de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In reaching its decision, the Court has carefully considered the Report, and the arguments contained therein, as well as the briefs that the parties have submitted.

A. Recommendations For Which There Are No Objections

Neither party objected to Magistrate Judge Pitman's recommendation that the Court grant summary judgment to Defendants with respect to (1) the claim that Defendants breached the Amended Agreement by failing to pay royalties arising from a direct television licensing agreement, see Report 31-32; and (2) any claims which pre-date the establishment of the Website, see Report 63-64 n.10. The Court agrees with Magistrate Judge Pitman's analysis as to these issues and adopts his recommendations and reasoning.

B. Contract Claims

4

Plaintiff and Defendants each seek summary judgment with respect to Plaintiff's breach of contract claims. The Report recommended that the Court (1) deny Plaintiff summary judgment with respect to its contract claims; and (2) grant Defendants summary judgment with respect to the claim that they failed to pay royalties arising from a direct television licensing agreement, and deny Defendants summary judgment with respect to all other contract claims.[6] Both Plaintiff and Defendants objected to portions of the Report's analysis.

1. Plaintiff's Objections

Plaintiff objected to the Report's recommendation that the Court deny Plaintiff summary judgment with respect to its claims that (1) Defendants breached the Amended Agreement by failing to pay royalties on merchandise sales; and (2) Defendants breached the Amended Agreement by publishing the Book without authorization. See Pl. Ob. 1-3. The Court concludes that Plaintiff's objections are unpersuasive.

The Court agrees with the Report's finding that Plaintiff failed to present evidence that Defendants owed it any royalties from merchandise sales. See Report 27-30. The Court also agrees with the Report's finding that Plaintiff offered no evidence that Defendants failed to obtain permission before publishing the

---

[6] The Court addressed the television licensing agreement claim in Section II.A.

5

Book. See Report 33-34. Although Plaintiff argues that Defendants bore the burden of proving that they obtained permission, the Court concludes that Plaintiff had the burden of proof pursuant to Texas contract law.[7] See PennWell Corp. v. Ken Assocs., Inc., 123 S.W.3d 756, 767 (Tex. App. 2003). Plaintiff cites no authority to the contrary.

Because Plaintiff failed to produce evidence to support its claims, the Court adopts Magistrate Pitman's reasoning and recommendations and denies Plaintiff summary judgment.

### 2. Defendants' Objections

#### a. Claims for Which Plaintiff Produced No Evidence

Defendants objected to the Report's recommendation that the Court deny Defendants summary judgment with respect to the claims that (1) Defendants breached the Amended Agreement by failing to pay royalties on merchandise and book sales (the "Royalty claims"), see Report 30-31, 34-35; (2) Defendants breached the Amended Agreement by failing to obtain permission to publish the Book (the "Book claim"), see Report 34-35; and (3) Defendants breached the Amended Agreement by failing to provide an accounting (the "Accounting claim"), see Report 36-37. See also Def. Ob. 22-24. Defendants argue that because the Report concluded that Plaintiff offered no evidence to support these

---

[7] The Court adopts the Report's recommendation that Texas contract law should apply to this action, pursuant to the Amended Agreement's choice of law provision. See Report 24.

6

three claims, it should have recommended that the Court grant Defendants summary judgment. The Court agrees with this objection, and grants Defendants summary judgment on the Royalty, Book, and Accounting claims.

Summary judgment is appropriate "when, after discovery, the party . . . against whom summary judgment is sought, has not shown that evidence of an essential element of her case - one on which she has the burden of proof - exists." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). Pursuant to Texas contract law, "the plaintiff has the burden to prove . . . breach of the contract by the defendant." PennWell Corp., 123 S.W.3d at 767; see also R.A. Mackie & Co., L.P. v. Petrocorp Inc., 329 F. Supp. 2d 477, 501-02 (S.D.N.Y. 2004).

The Report correctly concluded that Plaintiff failed to produce any evidence of breach of contract with respect to the Royalty claims, the Book claim, and the Accounting claim. See Report 27-30, 32-34, 35-36. The Court therefore grants Defendants summary judgment with respect to these claims.

### b. Website and Yahoo Store Claims

Defendants also objected to the Report's recommendation that the Court deny Defendants summary judgment with respect to Plaintiff's claims that the Website and Yahoo Store were not authorized by the Amended Agreement (the "Website and Yahoo Store claims"). See Report 37-38, 52-57; Def. Ob. 20-22. Defendants

argue that the plain language of the Amended Agreement permitted their actions. The Court disagrees, and adopts the Report's reasoning and conclusion that the Amended Agreement is ambiguous. See Report 52-56. Because there is a factual question whether Defendants' actions were permitted pursuant to the Amended Agreement, the Court denies summary judgment to either side on this claim.

c. Statute of Limitations

Defendants also argue that the Court should grant them summary judgment with respect to the Website and Yahoo Store claims because these claims are barred by the statute of limitations for contract disputes. See Def. Ob. 24-25. The Court concludes that there is a dispute of fact regarding whether Defendants' alleged breaches occurred within the limitations period, and therefore denies summary judgment on this ground. See Gen. Conference of Seventh-Day Adventists (Risk Mgmt. Servs.) v. AON Reinsurance Agency, Inc., 826 F. Supp. 107, 111 (S.D.N.Y. 1993) ("The statute of limitations on a breach of contract claim begins to run at the time of the breach."); Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402 (N.Y. 1993).[8]

---

[8] The Court does not reach the question of whether Texas' four-year or New York's six-year statute of limitations for breach of contract applies. Compare Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 1997) with N.Y. C.P.L.R. § 213(2) (McKinney 2004). Plaintiff filed suit on June 8, 2004. Defendants have failed to show the absence of factual dispute even under Texas' shorter limitations period.

8

For each of the Website and Yahoo Store claims, there is an issue of material fact regarding when Defendants' alleged breach occurred. First, as the Report noted, Plaintiffs have produced evidence that the website first began describing itself as the "official" or "licensed" Mickey Mantle website at some point after March 7, 2001. Report 44. Second, Defendants offered no evidence establishing when they created the Yahoo Store or when they began selling products on the Website that were produced by other manufacturers. See Report 46. Third, Defendants offered no evidence regarding when they stopped referencing the Picture on every page of the Website. Finally, Defendants' evidence that they began offering links to other websites in 1997 is insufficient for the Court to grant summary judgment on this claim. Defendants rely on the declaration of Defendant Lewis Rothgeb [D.E. 68], which states that the Website's outside links "were added to the Website when it was first created and published in October 1997." ¶ 5. The declaration cites no corroborating evidence. Because Mr. Rothgeb is a defendant in this action, the Court concludes that "there are 'specific bases for possible impeachment,'" regarding his declaration, "which justify a denial of summary judgment." See Wantanabe Realty Corp. v. City of New York, 315 F. Supp. 2d 375, 394 n.110 (S.D.N.Y. 2003).

Accordingly, the Court denies summary judgment on

9

Defendants' statute of limitations defense.

C. <u>Declaratory Judgment on Termination of Agreement</u>

Both Plaintiff and Defendants seek summary judgment with respect to the Declaratory Judgment claim. The Report recommended that the Court grant summary judgment to Defendants. <u>See</u> Report 38-39. Plaintiff objected, <u>see</u> Pl. Ob. 3-4, and the Court concludes that summary judgment should be denied to both Plaintiff and Defendants.

The Court agrees with the Report's analysis that Plaintiff had the right to terminate the Amended Agreement only if "defendants . . . 'default[ed] or breach[ed]' the [Amended] Agreement." Report 38.[9] Plaintiff has not produced evidence of Defendants' default or breach in the payment of royalties or the provision of an accounting. <u>See</u> Report 38-39. However, as the Report notes on pages 37-38, there is a genuine issue of material fact concerning whether the Website or Yahoo Store breached the Amended Agreement. The Court therefore denies summary judgment to Plaintiff and to Defendants on the Declaratory Judgment claim.

D. <u>Trademark-Related Claims</u>

Plaintiff seeks summary judgment with respect to its claims for (1) trademark infringement and dilution; (2) unfair competition; and (3) false designation of origin. Defendants

---

[9] Plaintiff's letter dated April 28, 1999 purporting to terminate the Amended Agreement, <u>see</u> Pl. Ob. 3, is not sufficient to terminate the contract absent Defendants' default or breach.

10

seek summary judgment on all trademark-related claims. The Report recommended that the Court (1) deny Plaintiff summary judgment; and (2) grant Defendants summary judgment with respect to the Lanham Act § 32(1) claim and deny Defendants summary judgment with respect to all other trademark-related claims. Both Plaintiff and Defendants objected to portions of the Report's analysis.

1. Plaintiff's Objection

Plaintiff objected to Magistrate Judge Pitman's recommendation that the Court grant summary judgment to Defendants on Plaintiff's Lanham Act § 32(1) claim. See 15 U.S.C. § 1114(1); Rep. 47-49; Pl. Ob. 4. This objection lacks merit, because Plaintiff has produced no evidence that it owns the trademarks at issue. See Report 48-49. Plaintiff argues that it has sole control over the Mickey Mantle Foundation (the "Foundation"), which owns the relevant trademarks. See Pl. Ob. 4. However, the deposition testimony that Plaintiff cites merely establishes that the Foundation still exists, not that Plaintiff has control over it. See Dep. Tr. of Danny Mantle 27 (Lifshitz Decl. Ex. 4 [D.E. 37-5]). Because Plaintiff has produced no evidence that it owns the trademarks at issue, the Court adopts the Report's recommendation and grants summary judgment to Defendants on this claim.

2. Defendants' Objections

Defendants objected to the Report's recommendation that the Court deny them summary judgment on all other trademark-related claims. See Def. Ob. 10-19. Defendants argue that (1) Plaintiff's trademark-related claims are barred by laches; (2) Defendants' actions were permitted by the plain language of the Amended Agreement; and (3) Plaintiff produced no evidence to support its Trademark Dilution and False Designation of Origin claims. The Court agrees with some of Defendants' objections, detailed below, and therefore adopts this section of the Report only in part.

### a. Laches[10]

The Court concludes that (1) Plaintiff's trademark-related claims regarding the Book are barred by laches; and (2) there is a dispute of fact regarding whether Plaintiff's other trademark-related claims are barred by laches. The Court therefore grants Defendants summary judgment on all trademark-related claims regarding the Book, and denies summary judgment on Defendants'

---

[10] The Court agrees with and adopts the Report's analysis of the legal standards governing the laches defense. See Report 41-43. In particular, the Court notes that when a plaintiff has delayed filing a lawsuit for federal trademark infringement or false designation of origin for six or more years, or delayed in filing a lawsuit for federal claims of trademark dilution for three or more years, the claim is presumptively barred by laches and the plaintiff bears the burden of negating the elements of the defense. See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191-92 (2d Cir. 1996); Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000).

12

other laches defenses.[11]

### i. The Book

Defendants argue that the Court should grant them summary judgment on all trademark-related claims with respect to the Book.[12] The Court agrees. It is undisputed that Plaintiff knew the contents of the Book more than six years before Plaintiff filed suit on June 8, 2004. See Def. 56.1 Stat. ¶¶ 79-80; Rothgeb Dec. ¶¶ 63-65 [D.E. 36]; Ex. 37 [D.E. 37-10]. Defendants' undisputed evidence creates a "presumption of laches" and shifts the burden to Plaintiff to "show why the laches defense ought not be applied in the case." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). Therefore, in order to survive summary judgment, Plaintiff must produce evidence that (1) its delay in asserting its Book claims was "excusable"; or (2) Defendants suffered no prejudice as a result of Plaintiff's delay in asserting its claims. Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483,

---

[11] The Court does not adopt the Report's laches analysis as applied to the Book, but it does adopt the Report's analysis and recommendations for Defendants' other laches defenses. See generally Report 41-47.

[12] Plaintiff's only trademark-related claim with respect to the Book appears to be a Lanham Act Section 43(a) claim of False Designation of Origin. See Report 59, Pl. Rep. 9. Because the Court grants Defendants summary judgment on all trademark claims regarding the Book, it does not separately consider the Report's false designation of origin analysis. See Report 59-60; Def. Ob. 19.

485 (S.D.N.Y. 2000).[13] Because Plaintiff produces no such evidence, the Court grants Defendants summary judgment on all claims arising from the Book. See Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1040-41 (2d Cir. 1980)(when a court dismisses a federal trademark claim on the ground that it is barred by laches, it may also dismiss ancillary state law claims based on the same facts).

### ii. All Other Trademark-Related Claims

Defendants also argue that the Court should grant them summary judgment on all other trademark-related claims, based on the doctrine of laches. The Court disagrees, because there is a factual dispute regarding when Plaintiff became aware of Defendants' alleged infringing conduct.

Defendants have established that Plaintiff was aware of the existence of the Website no later than February 7, 1998. See Def. Ob. 11; Report 43. However, the Court agrees with the Report's analysis and conclusion that "it is not clear that the

---

[13] A plaintiff's delay is excusable "[w]here plaintiff has not slept on her rights, but has been prevented from asserting them based, for example, on justified ignorance of the facts constituting a cause of action, personal disability, or because of ongoing settlement negotiations." Stone v. Williams, 873 F.2d 620, 625 (2d Cir. 1989), vacated on other grounds on reh'g by 891 F.2d 401 (2d Cir. 1989). A defendant is prejudiced when the passage of time reduced her ability to defend herself against a plaintiff's claims, or a defendant changes her position "in a way that would not have occurred if the plaintiff had not delayed." Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483, 487 (S.D.N.Y. 2000).

14

website included any of the allegedly infringing or diluting content [on February 7, 1998] or that plaintiff's representatives viewed any of the allegedly infringing or diluting content when they visited the website." Report 43; see also Report 43-47. Because there is a dispute of fact regarding the length of Plaintiff's delay in asserting its rights, the Court cannot hold as a matter of law that the doctrine of laches applies to Plaintiff's remaining trademark-related claims.

### b. Ambiguity of the Amended Agreement

Defendants also argue that the Court should grant them summary judgment with respect to Plaintiff's trademark-related claims because the Website and Yahoo Store were permitted by the plain language of the Amended Agreement. See Report 49-57; Def. Ob. 16-17. The Court disagrees. Because the Amended Agreement is ambiguous, see Section II.B.2.b, summary judgment on this ground is inappropriate.

### c. Trademark Dilution

Defendants objected to the Report's recommendation that Court deny Defendants summary judgment on Plaintiff's Federal Trademark Dilution Act of 1996 ("FTDA") claim. Report 57-58. Defendants argue that Plaintiff failed to produce any evidence to support its claim. The Court agrees with Defendants and grants them summary judgment on the FTDA claim.

In order to establish a violation of the FTDA, Plaintiff

15

must show, inter alia, that "the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." Savin Corp. v. Savin Group, 391 F.3d 439, 448-49 (2d Cir. 2004). Plaintiff failed to produce any evidence to support this element of its FTDA claim. See Report 58. Because Plaintiff "has not shown that evidence of an essential element of [its FTDA claim] . . . exists," the Court grants Defendants summary judgment. See Section II.B.2.a; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

III. Conclusion

For the reasons stated above, the Court adopts the Report only in part. The Court (1) grants in part and denies in part Defendants' motion for summary judgment [D.E. 52]; and (2) denies Plaintiff's motion for partial summary judgment [D.E. 59].

SO ORDERED

Dated:     New York, New York
           December 21, 2007

                              _____
                              Kimba M. Wood
                              United States District Judge

16